UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOSEPH GRECO,

                                         MEMORANDUM AND ORDER

              Plaintiff,                    CV 11-1134

            -against-                    (Wexler, J.)

COMMUNICATIONS WORKERS OF AMERICA,
LOCAL 1104, VERIZON COMMUNICATIONS
INC., TIM DONOVAN, VINCENT McADAMS
and KENNETH BECKER and "JOHN" or
"JANE DOE" 1 through 5, inclusive, whose real
names are presently unknown to plaintiff,

              Defendants.
-------------------------------------------------------------------X
APPEARANCES

MICHAEL A. SISKIN, ESQ.
150 Main Street
Port Washington, New York 11050

WEISSMAN & MINTZ LLC
BY: SUMANTH BOLLEPALLI, ESQ.
80 Pine Street
New York, New York 10005
Attorneys for Defendant Communication Workers of America, Local 1104

SEYFARTH SHAW LLP
BY: PAUL GALLIGAN, ESQ.
620 Eighth Avenue, 32nd Floor
New York, New York 10018
Attorneys for Defendant Verizon Communications

WEXLER, District Judge

        Plaintiff Joseph Greco ("Plaintiff" or "Greco"), a former employee of Defendant Verizon

Communications ("Verizon") commenced this case against Verizon, the Communication

1

Workers of America, Local 1104 (the union that represented Plaintiff when he was employed at Verizon (the "Union")), and three individual former co-workers (the "Individual Defendants"). The complaint sets forth common law claims of intentional and negligent infliction of emotional distress, negligence, assault and libel per se. The case was commenced in the Supreme Court of the State of New York, County of Suffolk, and thereafter removed here.

Presently before the court are the motions of the Union and Verizon (hereinafter "Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint.[1] Defendants have removed the case and seek dismissal on the ground that Plaintiff's state law claims are preempted by Section 301 of the Labor Relations Act of 1947, 29 U.S.C. § 185(a) ("Section 301"). It is further argued by the Union that, to the extent that Plaintiff states a Section 301 claim, any such claim is for breach of the duty of fair representation and is long time-barred. In the event that the court construes the claims as viable state law claims, both Defendants argue that remand would be futile because any such claims are time barred.

## BACKGROUND

I. Background

    A. The Parties and the Allegations of the Complaint

Plaintiff's employment by Verizon began in 1987. After spending two years as a Field Technician, Greco was promoted to the position of Cable Maintenance Splicer, a position that he held until 2006. Plaintiff's complaint details what he refers to as a "campaign of harassment" which is alleged to have started in 2002, when Greco was allegedly subject to verbal abuse by co-

---

[1] Defendants state, and Plaintiff does not contest, that the Individual Defendants were never served with the complaint. The Court assumes, therefore that Plaintiff is not pursuing any claims against the Individual Defendants.

2

workers who referred to Plaintiff as a "greasy guinea." Greco's complaint states that during 2004 his tools were stolen, his tires were slashed, and he began to be the subject of humiliating graffiti. It is further alleged that in 2005, the graffiti began to "include explicit sexual components." Greco alleges that in 2006, his foreman announced that the graffiti should stop, but to no avail. He further states that during that time period, threatening graffiti began to appear on Plaintiff's locker, and in areas subject to public view. Greco states that the verbal and emotional abuse was encouraged by his co-workers and Union shop stewards.

Greco began complaining to his Union in 2004. Those complaints, which continued into 2006, and included assertions that Greco was subject to abuse resulting in unsafe working conditions, are alleged to have fallen on deaf ears. In 2006, in addition to complaining to the Union, Greco complained to his supervisor at Verizon. While Verizon is alleged to have investigated the incident, no disciplinary action was taken. Indeed, Greco alleges that he was subject to retaliation in 2006, in the form of a threatened physical beating, and being ostracized by co-workers.

In 2006, when the abuse became "too much," for Greco he began a disability leave of absence. Included among the damages Greco alleges to have stemmed from the abuse of his co-workers are the 2002 end of his marriage, 2004 medical treatment for stress, and the 2005 removal of "lumps" from Greco's head. He states that in 2005, as a result of the abuse, he began to undergo psychotherapy sessions. Greco alleges that he has, <u>inter alia</u>, lost the ability to concentrate, become reclusive, lost his joy for life, and has trouble sleeping and eating as a result of the abusive work environment suffered at Verizon. He also states also that he now suffers from post-traumatic stress disorder.

As noted, Greco left Verizon in 2006, due to a claimed disability. In December of 2007, Verizon disapproved Greco's request for disability leave and demanded that he return to work in January of 2008. Greco did not return to work and was terminated in February of 2008.

B. The Complaint

Plaintiff's complaint, which was filed in state court on October 21, 2010, sets forth only state common law claims. Those claims are based upon both intentional and negligent behavior. Plaintiff concedes that the intentionally based causes of action that allege assault and intentional infliction of emotional distress as against the Union, are time barred. While Plaintiff has withdrawn his claim of assault as stated against Verizon, he has not withdrawn the remaining intentionally-based claims of intentional infliction of emotional harm or libel per se against his former employer. As to the negligence based claims, Plaintiff's complaint alleges a claim of simple negligence and a claim of negligent infliction of emotional distress against the Union

C. Procedural Posture

As noted, Plaintiff commenced this action in New York State Court. The action was removed on the ground that Plaintiff's claims, however couched, are governed wholly by Section 301, and are preempted by that statute. See Avco Corp. v Machinists, 390 U.S. 557, 559-60 (1968) (action preempted by Section 301 may be removed to federal court even where plaintiff's complaint does not include a federal cause of action); see, e.g., Foy v. Pratt & Whitney Group, 127 F.3d 229, 232-33 (2d Cir. 1997); Hernandez v. Conriv Realty Associates, 116 F.3d 35, 38 (2d Cir. 1997). Shortly after removal, the Union and Verizon submitted their motions to dismiss.

II. The Motions

Defendants argue that Plaintiff's state law claims are preempted by Section 301 because

4

they require interpretation of the collective bargaining agreement between the Union and Verizon (The "CBA"). The Union argues further that any claim stated against it can be only for breach of the duty of fair representation. Such a claim is argued to be long time-barred by the applicable six month statute of limitations. Like the Union, Verizon takes the position that Plaintiff's claims against it are governed by the CBA, and are therefore preempted. Verizon also argues, in the alternative, that even if Plaintiff's claims are not preempted, any claims remaining against it should dismissed, rather than remanded to state court, on statute of limitations grounds. After outlining relevant legal principals, the court will turn to the merits of the motions.

## DISCUSSION

I.  Standard for Motion to Dismiss

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft-quoted" standard set forth in Conley v. Gibson, 355 U.S. 41, 78 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Twombly, 127 S. Ct. at 1974, see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

While heightened factual pleading is not the new order of the day, Twombly holds that a "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Williams v. Berkshire Fin. Grp. Inc., 491 F. Supp.2d 320, 324 (E.D.N.Y. 2007), quoting, Twombly, 127 S. Ct. at 1959. In the

context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw all inferences in favor of the non-moving party. Watts v. Services for the Underserved, 2007 WL 1651852 *2 (E.D.N.Y. June 6, 2007). The court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974. A pleading that does nothing more that recite facts and bare legal conclusions is insufficient to "unlock the doors of discovery . . . and only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S. Ct. at 1950. While a Rule 12 motion is directed only to the sufficiency of the pleading, the court determining the motion may rightfully consider written documents attached to the complaint as well as documents incorporated thereto by reference and those of which plaintiff had knowledge and relied upon in commencing the action. See Brass v. Amer. Film Techn., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Watts, 2007 WL 1651852 *2. s

II.  Legal Principles: Preemption

The Supreme Court of the United States has long held that Section 301 gives federal courts jurisdiction over controversies involving collective bargaining agreements. Textile Workers v. Lincoln Mills, 353 U.S. 448, 456 (1957). The importance of uniformity in the interpretation of these labor agreements has led the Court to hold that such claims must be decided under a single body of federal law. Therefore, any attempt to adjudicate Section 301 claims according to state law is preempted. Id. at 455-56; Livadas v. Bradshaw, 512 U.S. 107, 122 (1994). Thus, a "state rule that purports to define the meaning or scope of a term in a contract suit is . . . preempted by federal law." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985).

6

Courts are called upon to decided whether claims against unions, as well as against employers, are subject to preemption. Several cases considering this issue have been decided by the Supreme Court. E.g., Livadas, 512 U.S. 107 (1994); Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988); Allis-Chalmers, 471 U.S. at 218; Teamsters v. Lucas Flour Co., 369 U.S. 95, 103-04 (1962).

Over time, the Court has made clear that while claims involving interpretation of a labor contract are preempted, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted . . . ." Allis -Chalmers, 471 U.S. at. Id. 210. The issue, as stated by the Court, is whether evaluation of the state law claim is "inextricably intertwined" with construction of the terms of the parties' labor agreement. Id. at 213. Thus, "if the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for §301 pre-emption purposes." Lingle, 486 U.S. at 409-10; see also Livadas, 512 U.S. at 124 ("bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished").

Following Supreme Court precedent, the Second Circuit has recognized that where resolution of a state law claim requires "interpretation" of a collective bargaining agreement, the claim is preempted. However, where a collective bargaining agreement need only be "consulted" in connection with resolution of the state law claim, there is no preemption, and the state law claim may proceed to adjudication. See, e.g., Vera v. Saks & Co., 335 F.3d 109 (2d Cir. 2003) (case alleging non-payment of commissions under state labor law led required substantial interpretation of the collective bargaining agreement and was therefore preempted); Wynn v. AC

Rochester, 273 F.3d 153, 157-58 (2d Cir. 2001) (Plaintiff's state law claims of fraud and misrepresentation not preempted by Section 301) ; see also Foy v. Pratt & Whitney Group, 127 F.3d 229, 233 (2d Cir. 1997) (claims against employer stemming form allegations of misrepresentations regarding the terms of the collective bargaining agreement held not preempted).

III. Disposition of the Motions

  A. Claims Against The Union

As the discussion above makes clear, if Plaintiff's claims require interpretation, and not mere reference to the CBA, they are preempted by Section 301. The starting point of the analysis is consideration of the elements of Plaintiff's claims. Morisssey v. Verizon Communications, Inc., 2011 WL 2671742 *3 (S.D.N.Y. 2011); Fenn v. Verizon, 2010 WL 908918 *5 (S.D.N.Y 2010); Zuckerman v. Volume Servs. Am., Inc., 304 F. Supp.2d 365, 371 (E.D.N.Y. 2004).

Plaintiff's claims against the Union sound in negligence. Specifically, Plaintiff alleges a claim of general negligence, as well as a claim for negligent infliction of emotional distress. As to the latter, New York recognizes such a claim in "extremely limited circumstances" where "(1) a bystander who was in the zone of danger suffers emotional trauma as a result of their observations or (2) the defendant breaches a direct duty to plaintiff which results in emotional injury to the plaintiff." Abbatiello v. Monsanto Co., 522 F. Supp.2d 524, 535 (S.D.N.Y. 2007), quoting, In re Air Crash Disaster at Cove Neck, Long Island, N.Y. on Jan. 25, 1990, 885 F. Supp. 434, 438 (E.D.N.Y.1995). Plaintiff's claim here appears, if any, to fall into the latter category of cases, and is, in reality no different from a general claim of negligence in which Plaintiff claims emotional injury as an element of damages.

8

Whatever Plaintiff's claims against the Union, as based in negligence, they must allege existence of a duty. Any such duty arises here out of Plaintiff's relationship with the Union pursuant to the CBA. Plaintiff's claims of breach of duty can allege nothing more than breach of a duty arising out of the CBA. Resolution of Plaintiff's claims therefore, require more than mere reference to the CBA; they require interpretation of the agreement. Such interpretation is necessary to determine the contours of the Union's duties, and any alleged breach thereof. Because Plaintiff's state law claims require interpretation of the CBA, all such claims against the Union are preempted by Section 301.

Even if the court were to construe Plaintiff's complaint to state a non-preempted claim against the Union, that claim would be for the breach of the duty of fair representation. A unions' duty to fairly represent its members arises from its status as the exclusive bargaining agent with the employer. Vaca v. Snipes, 386 U.S. 171, 177 (1967); Rodolico v. Unisys Corp. 96 F. Supp.2d 184, 187 (E.D.N.Y. 2000). Such claims are subject to a six month statute of limitations, and must be commenced within six months of the time when plaintiff "knows or should know" that the duty was breached. Marrero v. City of New York, 2003 WL 1621921 *3 (S.D.N.Y. 2003); Snay v. Postal Service, 31 F. Supp.2d 92, 96 (N.D.N.Y. 1998). The complaint sets forth clearly the fact that Plaintiff's first complaints to the Union were made in 2004 and, in any event continued no later than 2006. Because this action was not commenced until 2010, it is clear that the duty of fair representation claim is time-barred.

For the foregoing reasons, the court dismisses all claims against the Union.

B.    <u>Verizon's Motion</u>

The memorandum of law submitted by Plaintiff in opposition to the Union's motion

concedes that "the actions for assault and intentional infliction of emotional distress have lapsed." Plaintiff has withdrawn only the claim of assault as pleaded against Verizon. Thus, Plaintiff continues to press his claims of intentional infliction of emotional harm, and libel per se against Verizon. Verizon seeks dismissal of these claims on the ground that they, like the claims against the Union, are preempted by Section 301.

Although Verizon is Plaintiff's employer, and not his collective bargaining representative, the preemption analysis remains the same, i.e., claims are preempted if they require interpretation of the collective bargaining agreement, and are not preempted if they require only consultation with that document. As noted by the Second Circuit, the "boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement be 'consulted' is elusive." Wynn, 273 F.3d at 158.

Verizon claims that any duties it might have had with respect to the incidents of alleged abuse can arise only out of the CBA. It maintains that the CBA governs exclusively its relationship with Plaintiff, and mandates its conduct and the procedures for handling the precise type of complaints alleged to have been made by Plaintiff. Plaintiff, on the other hand, tries to distinguish his claims from those governed by the procedures set forth in the CBA. First, Greco seeks to distance his claim of intentional infliction of emotional harm from interpretation of the CBA by stating that Verizon is liable because it "continued to knowingly subject [Plainitff] to a shockingly hostile environment of torment and humiliation." Plaintiff similarly attempts to distance his claim of libel per se from Verizon's duties under the CBA by arguing that the company is liable because it "did not remove or cover the graffiti which was located in publicly accessible areas."

The court has consulted the provisions of the CBA referred to by Verizon and agrees that Plaintiff's claims that Verizon acted improperly require not only reference to, but interpretation of the CBA. The CBA governs wholly Verizon's conduct with respect to its handling of workplace complaints. Therefore, the interpretation of that contract is necessary to assess the propriety of Verizon's conduct. Accordingly, the court holds that the claims that remain against Verizon are preempted.

Even if such claims were not preempted, the court would exercise supplemental jurisdiction to dismiss the claims as clearly time-barred. While this court has the discretion to dismiss state claims when all federal claims have been dismissed, and dismissal is generally the proper course, it is not required. See 28 U.S.C. §1367(c). When determining whether to exercise jurisdiction, the court considers factors of judicial economy, convenience, fairness and comity. See Robles v. Copstat Sec., Inc., 2009 WL 1867948 *1 (S.D.N.Y. 2009). Here, the overwhelming factor of fairness favors dismissal.

As noted, Plaintiff conceded to dismissal of all intentionally-based claims against the Union, and to the assault claim as against Verizon. The court is at a loss to understand how Plaintiff could have conceded the untimeliness of these claims, which are based upon conduct that took place, at the latest, in 2006, while continuing to press two intentional claims (the claim of intentional infliction of emotional harm and libel per se) against Verizon. There is simply no theory that would support maintenance of any claim subject to a one year statute of limitations in this case, which was commenced in October of 2010 – almost 4 years after the conduct complained about took place, and almost 3 years after Plaintiff was terminated. This is especially true since the termination date has nothing to do with accrual of any cause of action

alleged in the complaint, which complains of co-worker behavior that spanned from 2002 through 2006. Because the claims against Verizon are time- barred, the court would have dismissed those claims even if they were not preempted.

## CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss are granted in their entirety. The Clerk of the court is directed to terminate the motions at docket entries 10 and 13, and to close the file in this case.

SO ORDERED.

/s/ LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
September 19, 2011